**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| NICHOLAS EZE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:08CV486 |
| | ) | |
| CITY OF DURHAM, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

**SHARP, Magistrate Judge**

This matter came before the Court on October 18, 2010, for a bench trial. The parties previously consented to the exercise of trial jurisdiction by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Docket No. 10.) During a pre-trial conference held on October 15, 2010, the parties stipulated to a bench trial. (Docket Entry dated 10/15/2010.) The parties further stipulated at the pre-trial conference to dismissal of Plaintiff's causes of action designated in the Complaint as Count III (negligent infliction of emotional distress) and Count IV (wrongful termination) and to dismissal of Count I except for its claim of retaliation by termination in violation of Title VII of the Civil Rights Act of 1964. (Docket No. 22.) Thus, Plaintiff's claims of a violation of the Family and Medical Leave Act (FMLA) (Count II) and of retaliation by termination for filing EEOC charges (Count I) remained for trial.

This Court heard evidence in this matter on October 18, 2010. Plaintiff Nicholas Eze was present and was represented by counsel as was Defendant City of Durham. At the close of Plaintiff's evidence, this Court denied Defendant's oral motion for judgment as a matter of law as to Plaintiff's FMLA claim. Plaintiff voluntarily dismissed his Title VII retaliation claim at that time. (Docket Entry dated 10/18/2010.)

During trial Plaintiff presented testimony only from himself. Defendant presented testimony only from Ms. Althea Bell, Director of Human Resources for the City of Durham. The Court admits into evidence Plaintiff's exhibits 1-14 and Defendant's exhibits 1-9.

Plaintiff claims that Defendant violated his FMLA rights when it terminated his employment after he had given Defendant notice of a serious health condition from which he was suffering and had requested FMLA leave. (Docket No. 2 at 16.) Plaintiff seeks damages as relief and alleges that Defendant's violation was willful. (*Id*.)

Defendant denies that Plaintiff gave proper notice that he was suffering from a serious health condition under the FMLA and denies that Plaintiff was in fact suffering from such a condition. (Docket No. 21 at 19-20.)

At the close of trial on October 18, 2010, the Court took the matter under advisement. The Court has now considered all of the trial evidence, and, pursuant to Rule 52 of the Federal Rules of Civil Procedure, makes the following findings of fact and conclusions of law.

## Findings of Fact

1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, and personal jurisdiction over both parties.

2. Defendant Eze was hired by Defendant City of Durham in December 2003 as a Senior Internal Auditor in the Department of Housing and Community Development.

3. Plaintiff's work involved preparing audit reports of city programs receiving federal Housing and Urban Development (HUD) funds.

4. Plaintiff filed EEOC charges of national origin discrimination and retaliation against the City on December 8, 2005, February 27, 2006, and May 17, 2006.

5. In North Carolina state court on May 26, 2006, Plaintiff signed a "Complaint For No-Contact Order For Stalking Or Non-Consensual Sexual Conduct" alleging that Mr. Mike Barros, the director of Defendant's Department of Housing and Community Development and thus Plaintiff's superior, harassed Plaintiff, trespassed on Plaintiff's personal property, communicated threats to Plaintiff, and vandalized Plaintiff's automobile such that the lives of Plaintiff, his wife, and his children were put in imminent danger. (Def.'s Ex. 3.)

6. On May 27, 2006, Plaintiff and his wife, Francisca Eze, caused a North Carolina state warrant for arrest to be issued for Mr. Mike Barros on charges of injury to personal property, second degree trespass, and communicating threats. (Def.'s Ex. 4.)

7. On November 1, 2006, in the North Carolina district court, Judge David Q. LaBarre signed an Order dismissing with prejudice the actions for protective orders filed by Plaintiff against Mr. Barros as well as two other similar actions Plaintiff filed against Katherine Simmons, another supervisor of Plaintiff, and Jesse Leak, a co-worker of Plaintiff. (Def.'s Ex. 5.) This order of dismissal was made "nunc pro tunc to 8/24/06." (*Id*.)

8. Also on November 1, 2006, Judge LaBarre of the North Carolina district court ordered that Plaintiff pay to the City of Durham the amount of $7,420.00 which represented the expenses incurred in defending Mr. Barros, Ms. Simmons, and Mr. Leake in the same actions. (Def.'s Ex. 6.)

9. Judge LaBarre found after a trial on August 23 and 24, 2006, that Plaintiff failed to support his allegations that the defendants "stalked," "harassed," or "communicated threats" to Plaintiff under North Carolina law, and that Plaintiff's testimony was "unpersuasive, implausible, and not credible." (Def.'s Ex. 5, Finding of Fact No. 2.)

10. Judge LaBarre, in his Order imposing costs and expenses against Plaintiff, found that Plaintiff had no reasonable basis for availing himself of the legal process he had used and that his claims were "frivolous, devoid of merit and lacking in good faith" and "unnecessarily subjected the Defendants to public embarrassment and ridicule." (Def.'s Ex. 6, Findings of Fact Nos. 6, 7.)

11. Defendant placed Plaintiff on paid administrative leave beginning May 30, 2006, because the protective orders requested by Plaintiff were in place against Plaintiff's supervisors. The protective orders would have made it effectively impossible for the supervisors to carry out their work responsibilities in the presence of, or near to, Plaintiff.

12. Plaintiff provided to his attorney, for forwarding to counsel for the city, two notes from Plaintiff's physician, Dr. Whelan, M.D. The first was dated 5/29/06 and stated: "No work 5/25/06 through 5/30/06 for medical reasons." The second note was dated 6/2/06 and stated: "Medical leave from 5/31/06, continuing until such time as Mr. Eze is medically able to return to work." (Pl.'s Ex. 5.)

13. Dr. Whelan diagnosed Plaintiff with depression with anxiety on June 2, 2006, and prescribed Zoloft 100 mg per day for Plaintiff. (Pl.'s Ex. 6.) Plaintiff was to return for reevaluation in six weeks. (*Id*.)

14. Defendant's counsel, Ms. Grantham, wrote a letter dated July 3, 2006, to Plaintiff's then-counsel, Ms. Fulghum. In this letter, Defendant offered Plaintiff a temporary assignment in the Fleet Maintenance Division, without loss of pay or benefits, contingent upon the following: (1) Plaintiff must, prior to reporting for work, meet with the City's psychologist for a complete fitness for duty examination and comply with all recommendations of the psychologist; (2) Plaintiff must refrain from having contact with supervisors in the Department of Housing and Community Development on city property until given written permission to do so by the city manager; (3) Plaintiff must "immediately dismiss his employment claims against the City, dismiss his civil actions for stalking against his supervisors in the DHCD, and ask the District Attorney to dismiss the criminal charges" that Plaintiff asserted against Mr. Barros; and (4) Plaintiff must cease and desist from contacting members of the press or media concerning his work situation and claims against the City or his supervisors. (Pl.'s Ex. 7.)

15. Plaintiff received the July 3, 2006, letter while he was on paid administrative leave but made the decision <u>not</u> to comply with the requirements of the letter.

16. Ms. Grantham, the City's attorney, wrote Plaintiff a letter dated July 14, 2006 advising that the City had received the physician's note dated July 6, 2006, stating that Plaintiff would be "out of work indefinitely for medical reasons" and that as of July 6, 2006 Plaintiff was

being charged sick leave. (Pl.'s Ex. 9.)  Attached to this letter was a copy of the City's FMLA policy and the appropriate form to claim leave benefits under the FMLA. (*Id*.)

17. Ms. Bell, the City's Director of Human Resources, advised Plaintiff by letter dated July 28, 2006, that he must report to the employee health services unit, provide information on his health condition, and determine when he might be able to return to work. She warned that if he did not report he would be terminated from City employment effective August 7, 2006. (Pl.'s Ex. 11.)

18. Plaintiff reported to the employee health services unit on August 4, 2006, and met with Nurse Dolores Blue. Plaintiff informed Nurse Blue of his diagnosis of depression, showed her that his next appointment date was October 9, 2006, with Dr. Whelan, and showed Nurse Blue his prescription bottles. Nurse Blue advised Plaintiff to call for an appointment at the health services unit after his October 9, 2006, appointment with Dr. Whelan.

19. Also on August 4, 2006, Plaintiff took the FMLA leave certification form he was sent on July 14, 2006 to his physician and had it completed. Plaintiff mailed a copy of this form to Nurse Blue at the employee health services unit on August 4, 2006, and hand-delivered a copy of this form to Nurse Blue on August 7, 2006.

20. The completed FMLA certification form Plaintiff submitted to Nurse Blue states that Plaintiff has an FMLA qualifying condition, "Major Depressive Episode," which began in April 2006 and was expected to last for 6-9 months. Plaintiff was expected to be incapacitated for that same length of time. Plaintiff was receiving continuing treatment in the form of prescription drugs and counseling. The form appears to be signed by Dr. Whelan. (Pl.'s Ex. 10.)

21. On August 25, 2006, Plaintiff received a termination letter from City Manager Patrick W. Baker. In the letter the city manager states that "no FMLA request has been received to this date." He further states that Plaintiff refused to have the fitness for duty evaluation completed and refused to provide any other medical information to Nurse Blue on August 4, 2006. The letter advises Plaintiff that his employment is terminated immediately based on his "failure to provide appropriate medical information" and his "refusal of a fitness for duty evaluation." (Pl.'s Ex. 13.)

22. At the time of his termination, Plaintiff was 52 years old and intended to work until he was 65 years old.

23. Plaintiff's salary at the time of his termination was $44,000 per year plus $15,000 per year in benefits.

24. Following his termination, Plaintiff filed for unemployment benefits, applied for jobs across North Carolina, but never gained employment and was unemployed at the time of trial.

25. On October 9, 2006, Dr. Whelan cleared Plaintiff to return to work with no restrictions. (Pl.'s Ex. 14.)

26. The City's July 3, 2006 letter advised Plaintiff that he could continue in the City's employ only if he complied with certain conditions. He decided <u>not</u> to comply with those conditions. His non-compliance is affirmatively shown by the fact that he did not dismiss his frivolous "no-contact" legal actions, but pursued them through trial. His legal actions were dismissed as frivolous and in bad faith.

**Conclusions of Law**

1. Plaintiff timely provided to his employer a physician's statement that Plaintiff suffered from depression. This condition qualified as a "serious health condition" under the FMLA because it required continuing treatment by a health care provider.

2. Plaintiff gave "appropriate notice" of his need to be absent from work for medical reasons.

3. Defendant interfered with the exercise of Plaintiff's right to unpaid leave by not granting FMLA leave and by terminating his employment.

4. Defendant's action in terminating Plaintiff was related to the Plaintiff's attempt to exercise FMLA leave.

5. Defendant violated Plaintiff's FMLA rights.

6. Defendant failed to prove that its violation of the FMLA was in good faith and that it had reasonable grounds for believing that its act was not in violation of the FMLA.

7. Plaintiff is entitled to zero damages as a result of Defendant's violation.

8. Plaintiff has not requested and is not entitled to equitable relief.

9. Plaintiff is entitled pursuant to 29 U.S.C. § 2617(a)(3) to reasonable attorney's fees and costs of the action in an amount to be determined at a later date.

## Discussion

### I. Findings of Fact

Only brief discussion regarding the Court's findings of fact is necessary.

The Court finds that Plaintiff's testimony as it related to some aspects of his employment at the City of Durham Department of Housing and Community Development was not credible. In particular, Plaintiff's testimony regarding the circumstances surrounding his obtaining an order of no-contact, and other legal action, against his supervisors, Mr. Barros and Ms. Simmons, and his co-worker, Mr. Leake, was not believable. Indeed, Plaintiff's testimony on these matters was fanciful and even bizarre, as was his conduct in pursuing legal action against his supervisors in late May of 2006.

In contrast, however, Plaintiff's testimony regarding his submissions of documentation of his medical condition to the City's employee health services unit and Nurse Blue was credible. In particular, the Court finds credible Plaintiff's testimony that he mailed a copy of his completed FMLA certification form (Pl.'s Ex. 10) to the attention of Nurse Blue at the employee health unit on August 4, 2006, and hand-delivered a copy of that form to Nurse Blue at the health unit on August 7, 2006. Plaintiff's submission of this form would be consistent with his other acts of submitting health information to Nurse Blue such as Plaintiff's exhibits 8 and 12. Moreover, there appears no reason why Plaintiff would make a trip to his physician to have the form completed and not return it to the health unit. Nurse Blue did not testify to refute Plaintiff's testimony on this issue. Therefore, Plaintiff's testimony on this issue is undisputed, and the Court credits it.

Plaintiff also credibly testified that he did not refuse to cooperate with Nurse Blue and did not refuse to provide information regarding his medical condition to Nurse Blue. This testimony was also undisputed at trial. The Court credits this testimony.

## II. Conclusions of Law

### A. Liability

Federal law prohibits an employer from interfering with, restraining, or denying the exercise or attempt to exercise, FMLA rights. 29 U.S.C. § 2615(a)(1). The termination of employment in violation of FMLA rights is an interference with the exercise of FMLA rights. *Howard v. Millard Refrigerated Servs., Inc.*, 505 F. Supp. 2d 867, 882 (D. Kan. 2007) ("Plaintiff's termination is an adverse action by defendant sufficient to meet the second requirement [that some adverse action by the employer interfered with the employee's right to take FMLA leave] to establish an interference claim.")

The Court concludes that Plaintiff's depression meets the requirements of a "serious health condition" under the FMLA, based primarily on the FMLA certification form completed by one of Plaintiff's treating physicians, Dr. Whelan. Plaintiff also testified credibly regarding his examinations by physicians and their instructions to him. Dr. Whelan certified in that form that Plaintiff was suffering from a physical or mental condition requiring continuing treatment by a health care provider which satisfies the definition of a "serious health condition" pursuant to 29 U.S.C. § 2611(11). In addition, Plaintiff's reported depression meets the requirements of 29 C.F.R. § 825.114(a)(2) which requires a period of

incapacity of more than three consecutive days that also involves treatment by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of a health care provider. *See Krenzke v. Alexandria Motor Cars, Inc.*, 289 Fed. App'x 629, 633-34 (4th Cir. 2008). Plaintiff therefore falls within the protection of the FMLA.

The Court has found that Plaintiff provided appropriate notice of his intent to take FMLA leave to Defendant. In *Krenzke*, the Fourth Circuit found that the defendant had received "sufficient notice of Krenzke's possible FMLA claim from the note faxed by" plaintiff's physician. *Id*. at 633. The note was "summary in nature," was received from a medical doctor and "stated that an extended leave was needed for medical reasons." *Id*. "The burden then shifted to [defendant] to determine whether Krenzke's condition qualified her for FMLA leave." *Id*. In the present action, Ms. Bell, the City's human resources director, testified that she received the note from Plaintiff's physician (written on the physician's prescription pad paper) dated July 6, 2006, stating that Plaintiff would be "out of work indefinitely for medical reasons." (Pl.'s Ex. 8.) Ms. Bell testified that this language was the triggering event for the City to send the FMLA form to Plaintiff.

Plaintiff sought FMLA leave by submitting to Defendant the completed FMLA certification form, Plaintiff's exhibit 10. This form provided even more information to

Defendant regarding Plaintiff's request for FMLA leave, and Defendant never informed Plaintiff that this certification form was deficient in any manner.[1]

Defendant argued in closing at trial that Plaintiff's notice requesting FMLA leave was not timely. This argument is vague and unpersuasive. If it refers to the timing of Plaintiff's return of the certification form, 29 C.F.R. § 825.313 allows an employer to deny FMLA coverage to an employee who initially fails to provide certification "until the required certification is provided." 29 C.F.R. § 825.313(a) (foreseeable leave) (section (b) similar for unforeseeable leave). Therefore, even assuming that Plaintiff did not timely provide certification, which the Court does not find, this failure would allow Defendant to deny FMLA leave only up until the time that Plaintiff provided the FMLA certification form to Nurse Blue on August 7, 2006. This was, of course, prior to his termination date of August 25, 2006. Accordingly, any untimely submission of FMLA certification by Plaintiff is not a valid defense to Plaintiff's termination in violation of the FMLA.

The FMLA regulations also provide time limitations for a plaintiff's initial notification to his employer of his intent to take FMLA leave. 29 C.F.R. § 825.302. However, the regulation provides that in those cases where the employee fails to provide

---

[1] Ms. Bell testified that she never received Plaintiff's FMLA certification form from Nurse Blue, as she should have in due course if Plaintiff actually submitted the form to Nurse Blue. The Court has found, however, that Plaintiff did provide the completed form to Nurse Blue, fulfilling his obligation under the FMLA to give proper notice. There is no evidence concerning what Nurse Blue did with the form, and the Court makes no finding in that regard.

such notice, "the employee shall explain the reasons why such notice was not practicable upon a request from the employer for such information." 29 C.F.R. § 825.302(a). There is no evidence that Defendant requested such information from Plaintiff. Even if there were a violation of this initial notice provision, which the Court does not find, Defendant has provided no legal authority suggesting that such a violation would justify denying Plaintiff's requested FMLA leave following its receipt of Plaintiff's FMLA certification form on August 7, 2006. Therefore, any untimely submission of initial notice of intent to take FMLA leave is not a valid defense to Plaintiff's termination in violation of the FMLA.

**B. Damages**

Having determined that Defendant violated Plaintiff's FMLA rights, the Court now addresses Plaintiff's damages. Defendant is liable for damages equal to any wages, salary, employment benefits, or other compensation denied or lost to Plaintiff "by reason of" Defendant's violation of the FMLA, such as the cost of providing care. 29 U.S.C. § 2617(a)(1). If no such compensation has been lost, Plaintiff may receive any actual monetary losses sustained by him as a direct result of the violation up to a certain amount. (*Id*.) Plaintiff may also recover interest on the amount described above and an additional amount as liquidated damages unless Defendant proves that its termination of Plaintiff was in good faith and that it had reasonable grounds for believing that its act was not a violation of the FMLA. (*Id*.) Plaintiff is also entitled to equitable relief and to a reasonable attorney's fee and the costs of the action. (*Id*.; § 2617(a)(3).)

It is clear that section 2617, because of its "by reason of" language, "provides no relief unless the employee has been prejudiced by the violation." *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002). In other words, "[t]he remedy is tailored to the harm suffered." *Id*.

For reasons that follow, the Court finds and concludes that Plaintiff was not prejudiced by reason of the violation of his FMLA rights, and suffered no harm therefrom. When Plaintiff filed his complaint for, and was granted *ex parte*, a no-contact order against Mr. Barros, Plaintiff's supervisor and the director of the department where Plaintiff worked, on or about May 26, 2006 (Def.'s Ex. 3), it forced Defendant to place Plaintiff on paid administrative leave to avoid having its employees coming into contact with Plaintiff and thereby violating that order. Although a trial was held on Plaintiff's complaint against Mr. Barros, as well as Plaintiff's similar charges against co-workers Simmons and Leake, on August 23 and 24, 2006, the no-contact orders appear not to have been formally dissolved until Judge LaBarre entered his written order on November 1, 2006 (made nunc pro tunc to August 24, 2006). (Def.'s Ex. 5.) During the period from May 26, 2006 until November 1, 2006, Plaintiff could not have resumed his former position with Defendant due to the existence of those no-contact orders.

In an attempt to resolve the situation caused by Plaintiff's frivolous and malicious legal actions in obtaining no-contact orders, Defendant offered to Plaintiff (through Plaintiff's then counsel) a temporary position in another department at another location on

July 3, 2006. (Pl.'s Ex. 7.) This offer was, however, explicitly contingent upon several conditions, one of which was that Plaintiff "must dismiss his civil actions for stalking against his supervisors in the DHCD." (*Id*. at 2.) Because the actions were tried in court in August 2006, it is established that Plaintiff did not in fact dismiss those actions. Plaintiff testified at trial that he made the deliberate decision <u>not</u> to comply with the conditions for continued employment the City outlined in the letter of July 3, 2006. Accordingly, Plaintiff by his own actions and testimony foreclosed any possibility of returning to work for Defendant. At the time Plaintiff filed his FMLA certification form on August 7, 2006, <u>he had no continuing employment to return to with Defendant</u>. Accordingly, Plaintiff lost no wages, salary, employment benefits, or other compensation "by reason of" Defendant's FMLA violation. *Cf. Cianci v. Pettibone Corp.*, 152 F.3d 723, 728-29 (7th Cir. 1998) (plaintiff who was fired before she was to take requested FMLA leave suffered no loss of income and proved no other damages, thus had no FMLA claim.)

The Fourth Circuit has not definitively ruled upon whether nominal damages are available under the FMLA. However, in *Montgomery v. Maryland*, 72 Fed. App'x 17 (4th Cir. 2003), the court suggested that they are not available. The court noted in that case that the plaintiff alleged no lost wages or cost of care but alleged emotional distress damages. *Id*. at 19. The court stated that such damages for emotional distress, "along with nominal and consequential damages," are "not covered under the Act." *Id*. The court cited with approval *Walker v. United Parcel Serv., Inc.*, 240 F.3d 1268, 1278 (10th Cir. 2001), in which the court

held that nominal damages are not recoverable under the FMLA. *Cf. Brumbalough v. Camelot Care Ctrs., Inc.*, 427 F.3d 996, 1007-08 (6th Cir. 2005) ("damages for emotional distress are not allowed under the FMLA.") Accordingly, this Court will follow the weight of authority on this issue and concludes that Plaintiff is not entitled to nominal damages.

Because there is no damages recovery, there is no prejudgment interest or liquidated damage amount to be recovered. Plaintiff will be awarded reasonable attorney's fees and the costs of the action pursuant to 29 U.S.C. § 2617(a)(1). Plaintiff may file for taxation of costs in accordance with LR 54.1, and for an award of attorney's fees in accordance with LR 54.2.

A judgment will be entered contemporaneously herewith, finding an FMLA violation but awarding no damages to Plaintiff.

/s/ P. Trevor Sharp<br>United States Magistrate Judge

Date: November 16, 2010